EXHIBIT A

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

ROBERT DANIEL REEVES,     )
                   )
     Plaintiff,         )
                   )
v.                    )
                   )
SETTLEMENT CAPITAL     )
CORPORATION, TRAVELERS LIFE  )   CASE NO. 05- **2236**
AND ANNUITY COMPANY, THE   )
TRAVELERS LIFE INSURANCE    )
COMPANY, THE TRAVELERS      )
INDEMNITY COMPANY, and      )
TRAVELERS PROPERTY        )
CASUALTY CORPORATION,      )
                   )
     Defendants.       )

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2005 AUG 29 PM 12:30

## COMPLAINT

### THE PARTIES

1. Plaintiff, Robert Daniel Reeves (hereinafter "Reeves"), is a citizen of the State of Alabama who currently resides at 2802 Alternate County Road 59, Deatsville, Alabama 36022.

2. Defendant, Settlement Capital Corporation ("SCC"), is a Texas Corporation with its principal place of business located at 14755 Preston Road, Suite 130, Dallas, Texas 75254. SCC is not licensed to do business in the State of Alabama.

3. Defendant, Travelers Life and Annuity Company ("Travelers Life"), is a foreign corporation with an address of One City Place, Hartford, Connecticut 06183-3415.

4. Defendant, The Travelers Life Insurance Company ("The Travelers"), is a foreign corporation with an address of One City Place, Hartford, Connecticut 06183-3415.

5. Defendant, The Travelers Indemnity Company ("Travelers Indemnity"), is a foreign corporation with an address of One Tower Square, Hartford, Connecticut 06183-8033.

6. Defendant, Travelers Property Casualty Corporation ("Travelers Property"), is a foreign corporation with an address of One Tower Square, Hartford, Connecticut 06183-8033.

7. The Travelers, Travelers Indemnity and Travelers Property shall sometimes hereafter be referred to collectively as the "Travelers Parties." The Travelers Parties have designated Agents for Service of Process within the State of Alabama.

## THE FACTS

8. In 1991, Plaintiff settled a workers' compensation claim under the Longshore and Harbor Workers' Compensation Act against his employer, Champion Swiftships, Inc,. and its insurer, Travelers Insurance Company for injuries which he received in connection with his employment. Pursuant to the settlement, the federal law judge having jurisdiction of the claim entered a

Decision and Order Approving Settlement (a true and correct copy of which is attached as "Exhibit A") on or about May 3, 1991. The Settlement called for Reeves to receive certain structured settlement payments, the details of which are set forth in the attached "Exhibit A," which was to be paid by Travelers Insurance Company who then assigned the obligation to its affiliates, the "Travelers Parties." Travelers Property and Travelers Indemnity purchased a series of annuities ("the Annuities") from Travelers Life and The Travelers in order to fund such obligation. The Annuities included policy number 17564 SA 55449 ("the monthly Annuity") which was used to fund the monthly settlement payments to Reeves as provided in "Exhibit A."

9. The said Order specifically provided that the "future payments herein shall not be accelerated or assigned by any payee, trustee, or beneficiary."

10. In 1996, Defendant SCC intentionally violated the said prohibition against such assignment and entered into an agreement with Reeves whereby it took assignment of the said "future payments" and promised to pay Reeves certain monies as stated in an agreement dated August 20, 1996 ("the Purchase Agreement") which is attached as "Exhibit B."

11. Beginning in 1996 and ending in 1999, SCC knowingly and willfully serially violated the said prohibition against assignment by a series of Amendments ("the Amendments") whereby SCC received the payments due to Reeves in return for monies paid or to be paid to Reeves. The Amendments are attached as "Exhibit C."

12. Due to the said violations, SCC has already received funds which were intended to be paid to Reeves for his benefit and the benefit of his dependents in the amount of $210,150.00 while paying only $117,224.00 to Reeves. If the violations are allowed to continue and the said Agreement and Amendments are not held to be void and unenforceable, SCC will have deprived Reeves of the amount of $1,132,800.00 by paying only approximately $00.1034 of each dollar.

## UNCONSCIONABILITY

13. The terms, conditions and effect of said Purchase Agreement and subsequent Amendments were and are unreasonable, or unconscionable, or both, and are disadvantageous as to the Plaintiff in that the Workers' Compensation Order intended for Reeves to receive $1,132,800.00 for his support and the support of his family and, by virtue of the said Agreement and Amendments he only received $117,224.00.

14. The said Agreement and Amendments are unreasonable, unconscionable, and unenforceable, whether the said transactions are interpreted to be a sale (ALA. CODE § 7-2-302) or a financing transaction (ALA. CODE § 8-8-5 and 5-19-16).

## UNJUST ENRICHMENT

15. To enforce the Agreement and the Amendments would cause SCC to be unjustly enriched and to receive a windfall, all to the detriment of Reeves.

## FRAUD

16. At the time SCC induced Reeves to enter into the Agreement and Amendments, it knew or should have known of the prohibition in the said Order against any assignment or transfer of the benefits provided by the Order. It concealed such provision from Reeves and failed to disclose such to him.

17. At the time SCC induced Reeves to enter into the Agreement and Amendments it knew that it was paying Reeves only $ 00.1034 on each dollar and that such a provision was unconscionable and that Reeves could have obtained a loan with a fair and marketable interest rate in the market place. SCC concealed such information from Reeves and failed to disclose such to him.

18. Due to the said failures to disclose, Reeves entered into the said transactions to his detriment.

## INJUNCTION AGAINST FORECLOSURE OF SECURITY INTEREST

19. In connection with the said Agreement and Amendments, SCC obtained a document purporting to give SCC a secured interest in Reeves' benefits under the said Order. Reeves is concerned that SCC will attempt to foreclose on the said secured interest. A true and correct copy of the Financing Statement is attached as "Exhibit D."

20. Plaintiff is in need of an interlocutory injunction against Defendant SCC, their agents, representatives, servants, attorneys, and all persons acting in concert with SCC, compelling them not to take any and all steps to initiate the foreclosure of said security interest.

**WHEREFORE,** Plaintiff requests relief as follows:

1. A Declaratory Judgment declaring the Purchase Agreement and subsequent Amendments void *ab initio* and directing the Traveler Parties to comply with the said Order and make all payments under the Order to Plaintiff or for his benefit;

2. A Judgment ordering recession and restitution on the grounds that the Purchase Agreement and subsequent Amendments are unconscionable;

3. A Judgment stating that Defendant SCC has been unjustly enriched to the detriment of Plaintiff;

4. An Interlocutory Injunction prohibiting foreclosure on the Security Interest between Plaintiff and Defendant SCC;

5. An Interlocutory Injunction prohibiting the Traveler parties from making any payment of the benefits under the Order to SCC or, in the alternative, an order stating payment be made directly to the Plaintiff;

6. Any other, further or different relief to which the Plaintiff may be entitled under the law and facts of this case.

_____
Attorney for Plaintiff

J. Knox Argo (ARG001)

J. Knox Argo, P.C.

6706 Taylor Circle

Montgomery, Alabama 36117

Telephone: (334) 279-0088

Telecopier: (334) 279-8830

## PLAINTIFF'S LIST OF EXHIBITS

1. Exhibit A is a true and correct copy of the Decision and Order Approving Settlement and a true and correct copy of the Summary of Benefits pertaining to the Annuities.

2. Exhibit B is a true and correct copy of the Purchase Agreement.

3. Exhibit C is a true and correct copy of the Amendments, collectively.

4. Exhibit D is a true and correct copy of the Financing Statement.

U.S. Department of Labor

Office of Administrative Law Judges
Heritage Plaza, Suite 530
111 Veterans Memorial Blvd.
Metairie, LA 70005
(504) 589-6201

In the Matter of                    )
                                    )
ROBERT REEVES,                      )
                    Claimant        )    Case No.   90-LHC-3152
                                    )
        against                     )    OWCP No.   6-73159
                                    )
                                    )
CHAMPION SWIFTSHIP,                 )
                    Employer        )
                                    )
                                    )
TRAVELERS INSURANCE CO.,            )
                    Carrier         )
                                    )

### DECISION AND ORDER APPROVING SETTLEMENT

This is a claim for compensation under the Longshore and
Harbor Workers' Compensation Act, as amended, 33 U.S.C. 901, et
seq., (hereinafter the "Act"), together with the Regulations
governing the administration of the Act, 20 C.F.R. §701 (1984).

After being afforded the opportunity to present evidence
for and against his claim, at a formal hearing, both parties
represented that a compromise settlement of said claim had been
reached and have submitted a written settlement agreement
pursuant to §8(i) of the Act which is supplemented by the filing
submitted by cover letter dated April 2, 1991.

After careful review of the evidence of record and an
evaluation of the merits of the claim and the proposed
settlement, and based upon claimant's testimony that he is
desirous of entering into said settlement after due and mature
deliberation and upon advice of counsel, and that claimant was
not under duress in settling this case--I conclude this
settlement is in claimant's best interest, and was not procured
under duress.

PLAINTIFF'S
EXHIBIT

-2-

Furthermore, after careful consideration of the claimant's age, education, work history, extent of disability, the availability of work which claimant may perform, and the probability of success if the case were to be formally litigated, I find the amount of the settlement adequate.

It is therefore Ordered and Adjudged that the employer and carrier pay unto claimant the following amounts:

(a)    (1)  $85,000.00 the claimant, Robert Reeves, in lump sum; and

(2)  A structured payment of $1,350.00 per month, for the remainder of his natural life, guaranteed for 44 years, beginning February 2, 1991; and

(3)  Payment, in lump sum, every five (5) years of the following amounts:

| | |
|---|---|
| February 2, 1995 | $30,000.00 |
| February 2, 2000 | $40,000.00 |
| February 2, 2005 | $50,000.00 |
| February 2, 2010 | $60,000.00 |
| February 2, 2015 | $70,000.00 |
| February 2, 2020 | $80,000.00 |
| February 2, 2025 | $90,000.00 |

The payments set out above are in full settlement of his claim against said employer and carrier for compensation and medical benefits causally related to his injury at Champion Swiftships, Inc. on or about January 11, 1983, and any aggravation thereof while working for said employer. The aforementioned payments are guaranteed. In the event of the claimant's death prior to the conclusion of these payments, the remaining payments shall be paid as they fall due, not as a lump sum to the estate.

-3-

The future payments herein shall not be accelerated or assigned by any payee, trustee, or beneficiary.

It is further Ordered and Adjudged that the employer and carrier shall pay all reasonable and necessary, and causally related medical expenses of the claimant through December 3, 1990, resulting from his injury on or about January 11, 1983 with the employer herein.

While employer has agreed to pay counsel for claimant a reasonable fee for the services rendered in this case, employer objects to some of the claimed services and expenses set forth in counsel's fee petition. 1/ Counsel for claimant's fee petition includes claims for services rendered and expenses incurred prior to referral of this claim to this office (September 4, 1990). Since the undersigned may only award those attorney fees incurred during the period the claim was before this office, the time expended before referral shall not be considered. <u>Shooter v. Director</u>, 11 BRBS 681 (1979); 20 C.F.R. §702.132(a)(1987). Employer's objections will now be addressed in the order presented.

Employer first objects to the proposed hourly rate of $150.00 as being excessive and proposes as an alternative rate no more than $100.00 per hour. In this case, the quality of the representation, the complexity and multiplicity of the issues and the remarkable results achieved fully warrants the proposed rate of $150.00 per hour. Thus, employer's first objection is rejected.

Employer next objects to the amount of time claimed by counsel for telephone conferences with his client. This objection is that the number of calls were excessive and unnecessary. Employer requests that the amount claimed for such conferences be reduced by half.

Counsel's fee petition reflects a total of 51 telephone conferences with client since referral to this office, each of which is billed at a rate of .25 hours aggregating a total billing of 12.75 hours for client telephone conferences. In response to this objection, counsel states:

"The telephone communication lines accounted or substantial attorney time and were the only source of solace to Mr. Reeves throughout the ordeal discussed above."

1/ Counsel updated his fee petition by filing a printout showing all services and expenses claimed by cover letter dated April 11, 1991. Counsel for employer has indicated that the same objections apply to this updated claim as was filed initially.

-4-

An inference is drawn from this statement that some portion of these communications were for purpose other than communicating matters which were necessary in the prosecution of this claim. More particularly, it is inferred from counsel's statement that some portion of these communications were motivated by considerations of claimant's emotional well being. Since an attorney may not be compensated for his social work, it is appropriate to reduce counsel's claim for this activity to more accurately reflect that portion of the communications which were necessary to prosecuting the claim. See Keith v. General Dynamics Corp., 13 BRBS 404 (1981). Accordingly, employers suggested reduction for this activity is accepted and the 12.75 hours claimed for this activity is reduced to 6.5 hours.

Employer next objects to the 9.25 hours claimed for legal research on the basis that this case did not involve any unique or novel issues. Counsel responds by stating that such research was conducted "in connection with the issues of penalties and attorney fees (resulting from carrier's) dilatory tactics ... and to determine (carrier's) liability for the aggravation of (claimant's) emotional condition because of the manner that this claim was handled." This explanation is accepted and it is found that the legal research conducted was necessary and reasonable and the full time claimed shall be allowed.

Employer also objects to the 2.5 hours claimed for "merit pleading." This term is defined by counsel as the "review of this petition to authorize settlement as well as the preparation of ... counsel's fee petition." The latter activity is clearly not compensable. Berkstresser v. WMATA, 16 BRBS 231 (1984). The former activity is vague and uncertain as to precisely what necessary work was performed. Furthermore, given the patent deficiencies in the initial proposed settlement, it is clear that counsel did not spend any time in reviewing the settlement application as to its sufficiency. For these reasons, the entire 2.5 hours claimed are disallowed.

Finally, employer objects to all of counsel's claimed expenses on the basis that the expenses claimed for telephone calls, photocopying, and special mailing in an aggregate amount of $220.75 represent expenditures which are customarily included in office overhead and are not compensable. This objection clearly has merit with respect to the $5.00 charged for a special mailing. It also has merit with respect to the $18.75 billed for three different months of photocopying. However, the $50.00 in expenses incurred for photocopying in the month of January combined with an aggregate of $95.00 for 31 long distance telephone calls since referral appear to represent extraordinary expenditures greater than those normally incurred in a law office

-5-

for that or similar activities. For this reason, counsel's claim for $50.00 expenses incurred in January 1991 for photocopying and the claim for $95.00 for 31 long distance telephone calls since referral will be allowed. The remaining expenses claimed since referral are disallowed.

In view of the foregoing, counsel for claimant, Morton H. Katz, Esquire, shall be awarded an attorney fee for 47.25 hours billings at a rate of $150.00 per hour for an aggregate amount of $7,087.50. The billings for three other individuals in counsel's firm in an aggregate amount of $160.00 for two hours which are not objected to by employer are also allowed. Additionally, total expenses in the amount of $145.00 shall be allowed.

It is therefore Ordered that employer shall pay to claimant's attorney, Morton H. Katz, Esquire, the sum of $7,392.50 as a reasonable attorney fee including expenses while this matter was before this office.

It is further Ordered that upon payment of the aforesaid amounts, employers liability for compensation and medical expenses under the Act for injuries arising out of claimant's employment shall be forever discharged in accordance with the provisions of Section 8(i) of the Act.

QUENTIN P. MCCOLGIN
Administrative Law Judge

Dated: MAY 0 3 1991

Metairie, Louisiana

QPMC:dqc

CERTIFICATE OF FILING AND SERVICE

I certify that on May 14, 1991 the foregoing Compensation Order was filed in the Office of the District Director, Sixth Compensation District and a copy thereof was mailed on said date by certified mail t2o the parties and their representatives at the last known address of each as follows:

Mr. Robert Reeves, 29100 County Rd., Apt. 38, Daphne, AL 36526
Claimant


Attorney Morton H. Katz, 820 O'Keefe Ave., New Orleans, LA 70113-1116
Claimant's Attorney


Travelers Insurance Co., P. O. Box 61124, New Orleans, LA 70161-1124
Insurance Carrier/Employer (if self insured)
**(if applicable)


Attorney Paul B. Howell, P. O. Drawer 460, Gulfport, MS 39502
Insurance Carrier's Attorney



A copy was also mailed by regular mail to the following:

Judge Quentin P. McColgin, Office of Administrative Law Judges, U. S. Department of Labor, 111 Veterans Memorial Blvd., Suite 530, Metairie, Louisiana 70005

Associate Solicitor of Labor for Employee Benefits, U. S. Department of Labor, 200 Constitution Ave., N.W., Suite N-4631, NDOL, Washington, DC 20210



M. SANDRA KITCHIN
District Director
Sixth Compensation District
U. S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation
214 North Hogan Street, Suite 1040
Jacksonville, Florida 32202


**POSTSCRIPT TO SELF-INSURED EMPLOYER/INSURANCE CARRIER:    Please submit Form LS-208 to indicate payment in accordance with the attached Compensation Order within 16 days of the payment. Failure to do so shall result in a $100.00 penalty per Section 14 (g) of the Longshore Act.

# SUMMARY OF BENEFITS

DATE: March 19, 1991

PREPARED FOR: **ROBERT REEVES**

OWNER OF THE ANNUITY CONTRACT: **THE TRAVELERS INDEMNITY COMPANY**

ANNUITY CONTRACT NUMBER: **17563 SA 55449**

ISSUED BY: **THE TRAVELERS LIFE INSURANCE COMPANY**

PAYEE(S): **ROBERT REEVES**

FIRST PAYMENT DATE AND SCHEDULE OF BENEFIT PAYMENTS:

**A SINGLE LUMP SUM PAYMENT OF $40,000.00 PAYABLE ON FEBRUARY 2, 2000.**

PRIMARY & CONTINGENT BENEFICIARY
IN EVENT OF ANNUITANT'S DEATH:

**THE ESTATE OF ROBERT REEVES**

THIS IS NOT A CONTRACT.

Under the terms of your settlement agreement and in order to protect the favorable tax treatment of these payments, you are not permitted to surrender, change the payment schedule or make loans against such payments or seek a lump sum payment for such benefits.

Please refer to the settlement agreement furnished you for more specific information. We suggest you keep a copy of that agreement with this folder.

# SUMMARY OF BENEFITS

DATE: March 19, 1991

PREPARED FOR:  ROBERT REEVES

OWNER OF THE ANNUITY CONTRACT:  THE TRAVELERS INDEMNITY COMPANY

ANNUITY CONTRACT NUMBER:  17567 SA 55449

ISSUED BY:  THE TRAVELERS LIFE INSURANCE COMPANY

PAYEE(S):   ROBERT REEVES

FIRST PAYMENT DATE AND SCHEDULE OF BENEFIT PAYMENTS:

A SINGLE LUMP SUM PAYMENT OF $70,000.00 PAYABLE ON FEBRUARY 2, 2015.

PRIMARY & CONTINGENT BENEFICIARY
IN EVENT OF ANNUITANT'S DEATH:
THE ESTATE OF ROBERT REEVES

THIS IS NOT A CONTRACT.

Under the terms of your settlement agreement and in order to protect the favorable tax treatment of these payments, you are not permitted to surrender, change the payment schedule or make loans against such payments or seek a lump sum payment for such benefits.

Please refer to the settlement agreement furnished you for more specific information. We suggest you keep a copy of that agreement with this folder.

# PURCHASE AGREEMENT

THIS AGREEMENT made and entered into this _____ZO_____ day of
_____AuGusT_____ 199_6_ by and among Settlement Capital Corporation, a Texas
corporation, or its assignee, SCC Management Company ("Purchaser") and Robert D. Reeves
("Seller").

# BACKGROUND

Seller executed a Settlement Agreement with Travelers Insurance Company among
others, dated May 3, 1991 (the "Release"), pursuant to which Seller is entitled to receive certain
payments (including the "Periodic Payments", as defined in the Release).

Travelers Insurance Company assumed the liabilities pursuant to the Release to
make the Periodic Payments. Travelers Insurance Company funded the payment of the Periodic
Payments by purchasing an annuity contract (the "Annuity") issued by The Travelers Life
Insurance Company (the "Annuity Company").

A schedule of certain of the Periodic Payments to be sold hereunder is attached to
this Agreement as Exhibit "A". A copy of the Release is attached hereto as Exhibit "B". A copy of
the Annuity or a letter evidencing the obligations under the Annuity is attached hereto as Exhibit
"C".

Seller desires to sell and assign to Purchaser ~~all of its~~ right, title and interest in and *part of his RDR*
to the right to receive payments under the Release, as described on Exhibit "A" and ~~all economic~~ *part*
benefits of such agreements, including all of its right, title and interest in and to the Periodic
Payments, as described on Exhibit "A" and Purchaser desires to purchase such rights and benefits,
all on the terms and under the conditions set forth in this Agreement.

*RDR* *The*   *RDR* *RD*

NOW, THEREFORE, in consideration of the foregoing, and of the representations,
warranties, covenants and agreements set forth herein, the parties hereto, intending to be legally
bound, hereby agree as follows:

## 1. Purchase and Sale.

a.    Seller hereby sells, transfers, assigns, sets over, and conveys to
Purchaser, all right, title and interest of the Seller in, to his right to receive payments under the
"Assigned Assets", as defined in subsection 1.c below, and, in reliance on the representations,
warranties and covenants of Seller contained herein, Purchaser hereby purchases and accepts the
assignment of all right, title and interest of the Seller in and to the right to receive the Assigned
Assets, for the aggregate purchase price of Eighteen Thousand Five Hundred Dollars ($18,500.00)
(the "Purchase Price").

b.    The Purchase Price shall be payable to Seller in immediately available
funds upon the mutual execution and delivery of this Agreement.

c.    The "Assigned Assets" shall mean all right, title and interest of Seller in,
to and under its right to receive under the Release, the Settlement Agreement, the payments listed in

*RDR*
Seller's Initials


PLAINTIFF'S
EXHIBIT
B

Exhibit "A", the right to receive the "qualified funding asset" as defined in the Qualified Assignment as set forth on Exhibit "A" and any interest on the proceeds of all of the above, and all of Seller's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above as such relate to the Schedule of Periodic Payments on Exhibit "A".

2.  Grant of Security Interest. It is the intention of the parties hereto that the provisions of this Agreement constitute the purchase and sale of all of Seller's right, title and interest in, to its right to receive payments under the Assigned Assets, and not a loan. In the event, however, that a court of competent jurisdiction were to hold that the transaction evidenced hereby constitutes a loan and not a purchase and sale, it is the intention of the parties hereto that this Agreement shall constitute a security agreement under the Uniform Commercial Code of the relevant state and any other applicable law. For such purpose, Seller hereby grants to Purchaser a first priority perfected security interest in and lien upon the Seller's right to receive payment of the Assigned Assets.

3.  Irrevocable Instructions; Acknowledgment.

a.  Simultaneously with the execution and delivery of this Agreement, Seller shall deliver to Purchaser a letter of instructions, addressed to the Annuity Company, directing that all payments to be made in relation to any of the Assigned Assets shall be sent to the Purchaser (the "Notice of Direction of Payment"). The Notice of Direction of Payment shall be in form and substance satisfactory to Purchaser, and shall indicate that such instructions shall be irrevocable and that no change may be made in the instructions or in the payments to which such instructions relate (including as to the payee or the manner or place of making such payments) without the prior written consent of Purchaser. Seller shall also, simultaneously with or subsequent to the execution and delivery of this Agreement, deliver to Purchaser, addressed as Purchaser may require, such other notices, instructions or communications, and copies of the foregoing, as Purchaser may deem necessary or proper to effectuate the intent and purposes of this Agreement.

b.  Simultaneously with the execution and delivery of this Agreement, Seller shall deliver to Purchaser: (i) a letter of instructions, addressed to the Annuity Company directing that all payments to be made in relation to any of the Assigned Assets after the death of Seller shall be sent directly to the Purchaser, and (ii) a Change of Beneficiary Form changing the beneficiary of the Assigned Assets, after the death of Seller, to "Settlement Capital Corporation", as sole beneficiary ((i) and (ii) above shall be referred to as the Change of Beneficiary Form). The Change of Beneficiary Form shall indicate that such instructions shall be irrevocable and that no change may be made in the instructions or in the payments to which such instructions relate (including as to the payee or the manner or place of making such payments) without the prior written consent of Purchaser. Seller shall also, simultaneously with or subsequent to the execution and delivery of this Agreement, deliver to Purchaser, addressed as Purchaser may require, such other notices, instructions or communications, and copies of the foregoing, as Purchaser may deem necessary or proper to effectuate the intent and purposes of this Agreement.

c.  Prior to the execution and delivery of this Agreement, Seller shall have delivered to Purchaser an acknowledgment of Estate of Robert D. Reeves, as primary beneficiary of the Assigned Assets, of the terms of this Agreement and to the effect that such persons acknowledge and agree that they shall not be entitled to any benefit under any of the Assigned Assets.

d.  Seller will execute all appropriate documentation irrevocably naming

2

Seller's Initials

Purchaser as sole beneficiary of the Assigned Assets, including but not limited to, a Testamentary Agreement.

4. Representations and Warranties of Seller. Seller hereby represents and warrants to Purchaser as follows:

a. Seller owns (and is selling and assigning to Purchaser hereunder) all right, title and interest in and to its right to receive payments under the Assigned Assets, free and clear of all liens, charges, security interests, encumbrances, and agreements of any nature whatsoever (other than this Agreement), and upon the execution and delivery of this Agreement, no party other than Purchaser shall have any present or future right therein or thereto.

b. This Agreement and all of the other documents or instruments contemplated herein or hereby, have been duly executed and delivered by Seller, and represent the legal, valid and binding obligation of Seller, enforceable in accordance with their respective terms. The copies of the Release attached to this Agreement are true and correct copies of such agreements, and have not been altered, amended or modified in any manner since the date of their respective execution. The Release is valid and binding on all parties thereto, is in full force and effect, and no party is in breach of or default under such agreement.

c. The execution, delivery and performance of this Agreement by Seller and the transactions contemplated herein and hereby, (i) do not conflict with any obligations of Seller, whether by contract, judgment or otherwise; (ii) shall not cause a breach of or default under (or give rise to any right of termination, cancellation or acceleration or similar right under) any contract or agreement by which Seller or its assets are or may be bound (including but not limited to the Release) (iii) will not result in the creation of, or give any party (other than Purchaser) the right to create, any lien, charge, security interest or encumbrance in, to or on any of the Assigned Assets; and (iv) will not give rise to a right (present or future) of any other party to assert any claim against Seller or its assets, or any of the Assigned Assets.

d. Seller is competent to enter into this Agreement, understands the terms and provisions of this Agreement and has been represented by tax and accounting advisors and counsel in the negotiation and execution of this Agreement.

e. Except for consents obtained and notices delivered prior to or simultaneously with the execution and delivery of this Agreement, and other than the permitted filing by Purchaser of the UCC-1 Financing Statements referenced in this Agreement, no consent of or other action by any party, and no notice of or filing with, any other party is required for the due execution, delivery and performance by Seller of this Agreement and any transactions contemplated herein or hereby, or for the perfection of or the exercise by Purchaser of any of its rights and remedies hereunder. No party has asserted, and no circumstances warrant the assertion by any party of, any rights in or to the right to receive the Assigned Assets, other than the rights of Seller therein, all of which are sold and assigned to Purchaser hereunder.

f. The Seller has taken all actions contemplated to be taken by it prior to or simultaneously with the execution and delivery of this Agreement. Seller acknowledges and agrees that Purchaser has not waived the taking of any such actions. All such actions taken are in full force and effect, as reflected in the various correspondence provided to Purchaser prior to or on the date hereof.

g. Seller has valid reasons for selling his interests in the Assigned Assets

3

Seller's Initials

rather than obtaining a loan with the Assigned Assets as collateral.

h. This Agreement constitutes a valid transfer, assignment, set-over and conveyance to the Purchaser of all right, title and interest of the Seller in, to and under the right to receive the Assigned Assets now existing and hereafter created.

i. Seller's residence and domicile is as set forth in the notice section of this Agreement. During the last ___5___ years, Seller has lived at such address.

j. No representation or warranty of Seller or any other statement of fact by Seller in this Agreement or in any of the documents or instruments delivered in connection herewith or in any agreement contemplated hereby, contains any untrue statement of fact, or fails to state information necessary to make any statement made herein or therein not misleading.

k. Seller has not, prior to the date hereof, sold or assigned its rights to receive the Assigned Assets or any part thereof. The right to receive the Assigned Assets is not subject to any mortgage, pledge, lien, charge, security interest, encumbrance, restriction or adverse claim of any nature whatsoever. Seller understands that any violation of this representation will result in the perpetration of fraud which could result in damages against the Seller in favor of the Purchaser.

l. Seller is not in default of any obligations concerning child-care, alimony or support.

m. If Seller is married, Seller has discussed this transaction with its spouse and, whether or not Seller's spouse has consented to this transaction, by executing this Agreement where indicated, such spouse waives any marital property right it may have in the Assigned Assets.

n. The execution and delivery of this Agreement and the other documents by Seller and the consummation of the transactions contemplated hereby will not result in the breach of any terms or conditions of or constitute a default or be void under the Settlement Agreement, the Annuity, any mortgage, note, instrument, agreement, or other oral or written obligation to which the Seller is a party or by which the Seller is bound or affected or violate any other order, writ, injunction, or decree of any court, administrative tribunal, or agency having jurisdiction over seller in any litigation to which Seller is or was a party or otherwise violate any law or result in the imposition or duty collection with respect to any transfer or excise tax on the Assigned Assets, the Annuity or their sale or conveyance.

o. Any and all restrictions on the assignability of the Assigned Assets were included in the Annuity and/or the Settlement Agreement and Release solely at Seller's request and for Seller's benefit and not for the benefit or protection of any other person. Any such restriction was included by Seller in order to assure the Seller of certain favorable tax treatment under Internal Revenue Code (the "Code") Section 104(a)(2). Seller understands that all income realized by Seller after closing upon any investment or use of the Purchase Price (unless exempt under a separate Code provision (e.g. interest earned on municipal bonds) may be taxable to Seller under the Code and that this transaction will result in an acceleration and increase in the amount of income taxes paid to the Internal Revenue Service. For the benefit of Purchaser, Purchaser's assigns, the Annuity Issuer and on behalf of Seller and Seller's heirs, beneficiaries, executors, administrators, and legal representatives, Seller hereby WAIVES AND RELEASES all rights of Seller in, to, or

4

Seller's Initials

under, all such restrictions on assignability if any. Notwithstanding the foregoing, Seller has not requested, nor expects to receive from Purchaser, a Form 1099 or any other documentation which could characterize the transaction contemplated by this Agreement as taxable to the Seller in any respect. Seller further acknowledges that Purchaser has provided to Seller no advice with respect to any tax implications in this transaction and Seller has relied on its own professional advisors concerning such matters.

p. As of the date of this Agreement, Seller is of the age of majority in the state noted as Seller's address in Section 15 hereof, mentally sane, and of a sound mind. Seller has never been convicted of a felony.

q. Seller is intimately familiar with the current status of Seller's financial affairs and condition. After due consideration of that condition and other relevant factors, Seller hereby irrevocably certifies that (i) as of the date of completion of the exchange of the Assigned Assets for the Purchase Price, the fair value of Seller's assets are and will be in excess of the sum of all of the debts of Seller, (ii) Seller is not presently engaged in or contemplating the commission of any act that could hinder, delay or defraud any creditor of the Seller, (iii) the Purchase Price equals or exceeds the reasonably equivalent value of the benefits, and (iv) the execution and delivery of this Agreement and the other documents by Seller and the consummation of the transactions contemplated hereby have not been intentionally concealed from, and will not hinder, delay, or defraud any creditor of Seller.

r. There are no attachments, executions, assignments for the benefits of creditors, or voluntary or involuntary proceedings in bankruptcy or under any other debtor relief laws contemplated by Seller or pending or threatened against Seller, the Assigned Assets, or the Annuity.

s. The Purchase Price is not the primary source of income of the Seller ~~and the Seller does not have any disability or other incapacity that would prevent the Seller from being gainfully employed.~~

5. Covenants of Seller. Seller hereby covenants to Purchaser as follow:

a. Seller shall not, and shall not permit any other party (except Purchaser or its assignee, if applicable) to withdraw funds from or set-off claims against the Assigned Assets, or otherwise change or take any other action to affect Assigned Assets, and shall not otherwise claim ownership of such Assigned Assets or the rights thereunder or funds therein, but shall rather inform any person who may inquire thereabout, of Purchaser's interests and rights therein and ownership thereof. Seller shall disclaim any interest in and rights to the Assigned Assets, and any rights to amend, modify, rescind, alter, assign, sell or encumber any rights in, to or under the Assigned Assets. Seller shall not take nor shall it permit to be taken any action (nor shall they fail to take or permit there to be a failure to take any action) which may result in a diminution or impairment of Purchaser's rights and interests under this Agreement.

b. Seller shall not do or fail to do any act which may constitute a breach of or default under (immediately or with the passage of time or with or without notice) the Release, the Settlement Agreement, or any of the agreements contemplated by this Agreement.

c. Seller shall provide to Purchaser at least thirty (30) days prior written notice of Seller's intention to move his residence or domicile from the address set forth in the

5

Seller's Initials

notice section of this Agreement.

      d.  Seller shall not make any change in its instructions to the Annuity Company regarding payments to be made to the Seller. Seller understands that any violation of this covenant will result in the perpetration of fraud which could result in damages against the Seller in favor of the Purchaser.

      e.  Seller acknowledges that either or each of the Annuity and the Settlement Agreement and Release may contain provisions that restrict or purport to restrict the assignability of the Assigned Assets. Seller further acknowledges that Seller has (both for Seller and Seller's heirs, executors, administrators, representatives, successors, and assigns) (i) released Purchaser from (and waived) any claim that the Assigned Assets were not assignable, (ii) indemnified and agreed to hold Purchaser harmless from (and agreed to defend Purchaser in any subsequent lawsuit with respect to) any claim that the Assigned Assets were not assignable, (iii) agreed never to sue Purchaser with respect to the assignability of the Assigned Assets. Without in any way limiting the scope or application of any other provision of this Agreement or the other documents (and in addition to all of the other covenants and agreements of Seller in this Agreement and the other documents), Seller covenants and agrees to so order and conduct Seller's affairs as to prevent the assertion of any claim that the Assigned Assets were not assignable.

      f.  Seller accepts the continuing and irrevocable duty to cooperate with Purchaser in providing to Purchaser the practical benefits of the bargain obtained under this Agreement, specifically including, without limitation, the duty to immediately deliver to Purchaser any checks, funds or other form of Annuity payment hereafter received by Seller or anyone (other than Purchaser) claiming by or through Seller. Seller covenants and agrees to take all reasonable action necessary to provide to Seller the practical benefits of the bargain obtained under this Agreement. In the event that any Annuity payment is ever denied, diverted, set-off, delayed, or withheld from Purchaser by virtue of any claim, demand, attachment, or other act or omission of Seller or any person acting or claiming by, through or under Seller, then Seller hereby promises to pay within ten (10) days of demand, the entire amount of any such Assigned Assets, together with interest at the rate of ten percent (10%) per annum from the date when such Assigned Assets should have been received by Purchaser to the date of actual payment.

      g.  If Seller learns (before or after the consummation of this Agreement) of the threat or institution of any condemnation, garnishment, turnover, or other action, suit or proceeding against or affecting any part of the Annuity, any of the Assigned Assets, or the other rights and benefits of the Purchaser under the terms of this Agreement, or relating to or arising out of the ownership, receipt, or utilization of the Annuity payments or the other Assigned Assets, then Seller will immediately notify Purchaser of same and will give Purchaser copies of all notices and other writings relating to it promptly after their receipt by Seller.

      h.  If Seller receives any notice relating to any allegedly unpaid claim affecting the Annuity or the Assigned Assets or to any other claim against the Annuity or the Assigned Assets, then Seller will promptly notify Purchaser of same and will promptly give Purchaser copies of all notices and other writings relating to it received by Seller promptly after their receipt.

      i.  Seller acknowledges and agrees that all of the information obtained by or provided to Seller regarding the Purchaser's annuity acquisition business (specifically including without limitation the form, substance, and terms of this Agreement and the other documents

Seller's Initials

prepared by Purchaser) (i) shall be treated by Seller as valuable and confidential proprietary information belonging to the Purchaser, (ii) shall be safeguarded and kept strictly confidential by Seller except for the limited purpose of assisting Purchaser in obtaining other annuities, and (iii) shall never be used by Seller to the detriment of, or in competition with, the Purchaser's annuity acquisition business; provided, however, that the foregoing covenant shall not prevent Seller's disclosure of such information in accordance with the requirements of a legal demand from a governmental entity (such as the Internal Revenue Service or a court ordered subpoena duces tecum).

j. Seller hereby irrevocably grants to Purchaser the Limited power and authority (at Purchaser's option and without any obligation to do so) to create and use signature stamp from a specimen signature obtained by Purchaser for use: (i) in endorsing checks issued under the Annuity or the Settlement Agreement in payment of the Assigned Assets; and (ii) in executing any address change, consent, notice agreement, covenant, beneficiary designation, assignment, transfer, or other instrument determined by Purchaser to be appropriate or necessary in order to provide to Purchaser all of the practical benefits of the transaction described and intended herein and in the other documents, which authority is specifically intended to survive the death, incompetency, or disability of the Seller.

k. As described in the Instruction Letters, Seller shall and does hereby instruct the Annuity Company (i) to mail all future Annuity payments comprising the Assigned Assets to the address designated by Purchaser and to revise the mailing address of the primary and contingent beneficiaries to such designated address; (ii) to wholly disregard all future requests, demands, and instructions received from Seller (or any other person besides the Purchaser) with respect to the Assigned Assets; and (iii) to accept and honor future requests, instructions, and orders with respect to the Assigned Assets only from Purchaser. No further consent of any kind shall be required from Seller before or in connection with the reliance on the provisions of this Agreement and the other documents by the Annuity Company and the owner of the Annuity.

6. Further Assurances of Seller.

a. Seller agrees that, from time to time, at its expense, it will promptly execute and deliver all further instruments, documents, agreements and acknowledgments, and take such further action, that may be necessary or appropriate, or that Purchaser may request, in order to perfect, protect or more fully evidence the transfer and assignment of the right to receive the Assigned Assets or to enable the Purchaser to exercise or enforce any of its rights hereunder or thereunder (including but not limited to Purchaser's right to assign this Agreement or the benefits hereof). Without limiting the generality of the foregoing, Seller will (i) upon the request of Purchaser, execute and file or cause to be filed, or permit Purchaser to file, such financing or continuation statements, or amendments thereto or assignments thereof, and such other instruments or notices, as may be necessary or appropriate, or as the Purchaser may request, (ii) simultaneously with the execution of this Agreement, execute and deliver to Purchaser a "Special Irrevocable Power of Attorney", and (iii) deliver to Purchaser an opinion of counsel to Seller respecting the transfer of the Assigned Assets, which opinion shall be acceptable in form and substance to Purchaser.

7. Indemnification by Seller.

a. Seller hereby agrees to indemnify, defend and hold harmless Purchaser and any of its present or future agents, attorneys, employees, officers, partners, shareholders,

7

Seller's Initials

directors and assigns, or other associates and affiliates, from and against all claims, losses, liabilities, obligations, damages, penalties, actions, judgments, suits, causes of action and related costs and expenses of any nature (including counsel fees) which may be imposed upon, incurred by or asserted against Purchaser in any way arising out of, related to or in connection with, the purchase by Purchaser of (or, if applicable, Purchaser's security interest in) the Assigned Assets, or any breach by Seller of its obligations under this Agreement or any other agreement or instrument contemplated by this Agreement.

8. <u>Representations and Warranties of Purchaser</u>.

a. Purchaser hereby represents and warrants to Seller as follows:

b. Purchaser is a corporation duly organized and validly existing under the laws of the state of its organization, and is qualified to do business in and is in good standing in each jurisdiction where the nature of its business requires such qualification.

c. Purchaser has the power and authority to execute, deliver and perform this Agreement and the agreements and transactions contemplated hereby.

d. The execution, delivery and performance of this Agreement and the agreements and transactions contemplated hereby have been duly authorized by all necessary action of Purchaser, constitute legal, valid and binding obligations of Purchaser, enforceable in accordance with their respective terms.

9. <u>Event of Default</u>. The failure of Seller to comply with any term of this Agreement constitutes an Event of Default.

10. <u>Confession of Judgment</u>. SELLER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY(S) OR THE PROTHONOTARY OR CLERK OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, FOLLOWING THE OCCURRENCE OF AN EVENT OF DEFAULT UNDER THIS AGREEMENT, TO APPEAR FOR THE SELLER IN ANY SUCH COURT, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM OR TIME, AND CONFESS OR ENTER JUDGMENT AGAINST SELLER IN PURCHASER'S FAVOR FOR ALL OBLIGATIONS DUE OR TO BECOME DUE BY SELLER HEREUNDER, WITH COSTS OF SUIT, RELEASE OF ERRORS AND REASONABLE ATTORNEYS' FEES AND FOR PURPOSE HEREOF A COPY OF THIS AGREEMENT SHALL BE SUFFICIENT WARRANT. SUCH AUTHORITY AND POWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF AND JUDGMENT MAY BE CONFESSED FROM TIME TO TIME AS PURCHASER MAY DETERMINE.

SELLER, BEING FULLY AWARE OF THE RIGHT TO NOTICE AND A HEARING CONCERNING THE VALIDITY OF ANY AND ALL CLAIMS THAT MAY BE ASSERTED AGAINST SELLER BY PURCHASER BEFORE A JUDGMENT CAN BE ENTERED HEREUNDER OR BEFORE EXECUTION MAY BE LEVIED ON SUCH JUDGMENT AGAINST ANY AND ALL PROPERTY OF SELLER, HEREBY UNCONDITIONALLY WAIVES THESE RIGHTS AND AGREES AND CONSENTS TO JUDGMENT BEING ENTERED BY CONFESSION IN ACCORDANCE WITH THE TERMS HEREOF AND EXECUTION BEING LEVIED ON SUCH JUDGMENT AGAINST ANY AND ALL PROPERTY OF SELLER, IN EACH CASE WITHOUT FIRST GIVING NOTICE AND THE

8

*R D R*
Seller's Initials

OPPORTUNITY TO BE HEARD ON THE VALIDITY OF THE CLAIM OR CLAIMS UPON WHICH SUCH JUDGMENT IS ENTERED.

11. Consent to Jurisdiction. The Seller consents to the jurisdiction of the courts of the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania in connection with any claim or dispute arising under or in connection with this Agreement. If any action in connection with any such claim or dispute is commenced by or against the Purchaser in any such court, the Seller also agrees that service of process may be made on the Seller by certified or registered mail addressed to Seller at his address specified in the preamble to this Agreement, or at such other address as may be designated in a notice comply with the terms of paragraph 15 herein.

12. Waiver of Jury Trial. SELLER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND SELLER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE PURCHASER (INCLUDING ITS COUNSEL) HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE PURCHASER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL. SELLER ACKNOWLEDGES THAT THE PURCHASER HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT, BY, INTER ALIA, THE PROVISIONS OF THIS SECTION.

13. Survival of Representations, Warranties and Covenants. Regardless of any investigations and examinations that may have been made by the parties, all representations, warranties and covenants made by any party pursuant to this Agreement shall survive the execution hereof and the consummation of the transactions contemplated hereby.

14. Binding Agreement. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, executors, successors, beneficiaries and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer upon any other person or entity, except Seller and Purchaser, and their respective representatives, executors, successors, or permitted assigns, any rights or remedies by reason of this Agreement.

15. Notices. All notices and other communications hereunder shall be in writing and shall be made by delivery by means by which the sender obtains a receipt of delivery from the carrier (including without limitation, certified mail return receipt requested or overnight courier services), addressed to the party to whom a request or demand is to be made. Such demand or notice or request shall be deemed given or received on the date actually received or the date indicated on the receipt, whichever is earlier.

The addresses of the parties are as follows:

If to Seller:

Robert D. Reeves
811 Deatsville Hwy. A-34
Millbrook, AL 36054

9

RDR
Seller's Initials

If to Purchaser:

Settlement Capital Corporation
15851 Dallas Parkway, Suite 600
Dallas, TX 75248

16. <u>Entire Agreement</u>. This Agreement and the agreements reflected in the Exhibits hereto constitute the entire understanding and agreement among the parties with respect to the subject matter hereof, no other agreement or representation having been relied upon by the parties. This Agreement supersedes all prior or contemporaneous agreements, whether written or oral, with respect to such subject matter. This Agreement may not be modified or amended except in a writing signed by the parties hereto.

17. <u>Controlling Law</u>. This Agreement shall be governed, construed and enforced in accordance with the internal laws of the Commonwealth of Pennsylvania.

18. <u>No Waivers</u>. No failure to exercise, delay in exercising or single or partial exercise of any right, power or remedy by any party, and no course of dealing between or among any of the parties, shall constitute a waiver of, or shall preclude any other, or further exercise of, any right, power or remedy.

19. <u>Expenses</u>. Seller and Purchaser shall pay their own respective costs and expenses incidental to the carrying out of this Agreement.

20. <u>Headings</u>. The section and subsection headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

21. <u>Gender</u>. Where the context or construction requires, all words applied in the plural shall be deemed to have been used in the singular, and vice versa; the masculine shall include the feminine and neuter, and vice versa; and the present tense shall include the past and future tense, and vice versa.

22. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, all of which taken together shall constitute a single agreement.

23. <u>Assignment</u>. Purchaser (and any assignee of Purchaser) may assign its right, title and interest in and to this Agreement, the Annuity and the Assigned Assets without any requirement of prior consent from or notice to the Seller. Purchaser and Seller agree expressly that upon any such assignment and assumption by the assignor, Purchaser shall without any requirement of further documentation be released automatically from any liability hereunder and thereunder and Seller shall look solely to such assignee for any payment (e.g. of the Purchase Price) and performance hereunder and thereunder. Without limiting the breadth of the foregoing sentence, Seller shall upon request of Purchaser or any successive Purchaser execute and deliver any such documents as Purchaser may require to effectuate and consummate this transaction, as assigned. If Purchaser assigns this Agreement, any references to the named Purchaser in any Exhibits to this Agreement may be treated as for purposes of illustration only.

_Seller's Initials_

10

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed by the parties or their duly authorized officers or agents, as applicable, as of the date first above written.

SELLER:

_Robert D. Reeves_
Robert D. Reeves

STATE OF : Alabama
COUNTY OF : Montgomery
This instrument was acknowledged before me on this 20 day of August, 19 96, by Robert D. Reeves.

[SEAL]

_Kimberly A. Fuller_
Notary Public in and for the State of Alabama
Printed Name: Kimberly A. Fuller
My Commission Expires: 4-26-99

SELLER'S SPOUSE:

_Michelle R. Reeves_
Michelle R. Reeves

STATE OF : Alabama
COUNTY OF : Montgomery
This instrument was acknowledged before me on this 20 day of August, 19 96, by Michelle R. Reeves.

[SEAL]

_Kimberly A. Fuller_
Notary Public in and for the State of Alabama
Printed Name: Kimberly A. Fuller
My Commission Expires: 4-26-99

PURCHASER:

Settlement Capital Corporation, a Texas corporation

By: _James E. Lokey_
James E. Lokey, President

STATE OF : Texas
COUNTY OF : Dallas
This instrument was acknowledged before me on this 23rd day of August, 1996, by James E. Lokey, President, Settlement Capital Corporation, on behalf of such corporation.

[SEAL]

_Carrie L. Putnam_
Printed Name: Carrie L. Putnam
My Commission Expires: 8-10-99

CARRIE L. PUTNAM
NOTARY PUBLIC
State of Texas
Comm. Exp. 08-10-99

11

# FIRST AMENDMENT TO PURCHASE AGREEMENT

THIS FIRST AMENDMENT TO PURCHASE AGREEMENT (the "Amendment") made and entered into this _5th_ day of _December_, 199_6_, between Robert D. Reeves ("Seller") and Settlement Capital Corporation, a Texas corporation, or its assignee, SCC Management Company.

## BACKGROUND

A.    The Seller and Purchaser entered into a certain Purchase Agreement dated _20_ day of _August_, 19_96_ (the "Agreement"), pursuant to which Purchaser purchased all of Seller's right, title and interest to receive certain Periodic Payments under the Release and Qualified Assignment, all on the terms and conditions more fully set forth therein.

B.    The Agreement is incorporated herein by reference thereto as if fully set forth in this Amendment. Any capitalized terms and headings used herein shall have the meanings given to them in the Agreement.

C.    At the request of the Seller, the Purchaser has agreed to amend the terms of the Purchase Price and the payment terms of same.

D.    The parties hereto now desire to amend the Agreement to reflect, among other things, the manner and conditions on which the Purchaser has agreed to the change in Purchase Price, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises cotained herein and intending to be legally bound hereby, the parties hereto covenant and agree that the Agreement is modified and amended as set forth below.

1.    Section 1 of the Agreement is hereby deleted in its entirety and amended to read in its entirety as follows:

1.    <u>Purchase and Sale.</u>

1.1    <u>Purchase and Sale.</u> Seller hereby sells, transfers, assigns, sets over and conveys to Purchaser, all right, title and interest of the Seller in, and to his right to receive payment under the "Assigned Assets", as defined in subsection 1.3 below, and, in reliance on the representations, warranties, and covenants of Seller contained herein, Purchaser hereby purchases and accepts the assignment of all right, title and interest of the Seller in and to the right to receive the Assigned Assets, which consist(s) of the following: lump sum payment due and payable on February 2, 2000 in the amount of $40,000.00 for the aggregate purchase price of Eighteen Thousand Five Hundred Dollars ($18,500.00) (the "Purchase Price"); and lump sum payment due and payable on February 2, 2005 in the amount of $50,000.00 for the aggregate purchase price of Eleven Thousand Dollars ($11,000.00).

1.2    <u>Payment of the Purchase Price.</u> The amount of $18,500.00 has been paid to Seller previously and the amount of $11,000.00 is being paid to the Seller upon the mutual execution and delivery of this Agreement



Seller's Initials

1

1.3    Assigned Assets; Contract Payment. The "Assigned Assets" shall mean all right, title and interest of Seller in, to and under his right to receive: lump sum payment due and payable on February 2, 2000 in the amount of $40,000.00; and lump sum payment due and payable on February 2, 2005 in the amount of $50,000.00 under the Release, the Settlement Agreement and the Qualified Assignment, and all right, title and interest of Seller to receive the monies under or pursuant to such agreements as noted on Exhibit "A" hereto (including, but not limited to, the Periodic Payments), any monies actually received by Seller pursuant to or by reason of any such agreements, the right to receive the "qualified funding asset" as defined in the Qualified Assignment and any interest on and the proceeds of all of the above, with respect to the: lump sum payment due and payable on February 2, 2000 in the amount of $40,000.00; and lump sum payment due and payable on February 2, 2005 in the amount of $50,000.00 and all of Seller's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above. Any payments made on account of any of the Assigned Assets (including, but not limited to, the Periodic Payments) is hereafter referred to as a "Contract Payment".

2.    Representations and Warranties. As an inducement to the Purchaser to execute this Amendment, the Seller makes the following representations and warranties to the Purchaser and acknowledges Purchaser's justifiable reliance thereon:

(a)    the Borrower is not in default under the Agreement;

(b)    all representations and warranties previously made to the Purchaser by the Seller remain true, accurate and complete;

(c)    the Agreement, as modifieed and amended herein, is a valid and binding obligation of the Seller and is fully enforceable in accordance with all stated terms; and

(d)    the Seller remains in compliance with all covenants and requirements set forth in the Agreement.

3.    Conditions Precedent. As a condition precedent to Purchaser's obligations under the Agreement, Seller shall execute and deliver to Purchaser in connection with this Amendment all other documents reasonably requested to be executed by Purchaser, including, but not limited to, the execution and delivery of UCC-1 Financing Statements to the Purchaser, as required in Section 4.5 of the Agreement and any and all additional notices and documents which may be required under the Agreement, including but not limited to the Notice of Direction of Payment, and an amendment to the Will.

4.    Binding Effect. This Amendment shall be binding upon and shall inure to the benefit of the Purchaser, the Seller and his heirs, executors, administrators, successors and assigns.

5.    Governing Law. This Amendment shall be governed by and construed in accordance with the domestic, internal laws (but not the law of conflicts of law) of the Commonwealth of Pennsylvania.

6.    Ratification. Except as expressly modified and amended herein, the Loan Agreement is hereby ratified and affirmed and will remain in full force and effect.

Seller's Initials

IN WITNESS WHEREOF, Purchaser has caused this Amendment to be duly executed by its General Partner and Seller has set his hand and seal hereto on the day and year first above written.

SELLER:

_Robert D. Reeves_
Robert D. Reeves

STATE OF : Alabama
COUNTY OF : montgomery

This instrument was acknowledged before me on this 5th day of December, 1996 by Robert D. Reeves.

[SEAL]

Notary Public in and for the State of Alabama
Printed Name: Kimberly A Fuller
My Commission Expires: 4-26-99

SELLER'S SPOUSE:

_Michelle Reeves_

STATE OF : Alabama
COUNTY OF : Montgomery

This instrument was acknowledged before me on this 5 day of December, 1996 by michelle Reeves.

[SEAL]

Notary Public in and for the State of _____
Printed Name: _____
My Commission Expires: _____

PURCHASER:

SETTLEMENT CAPITAL CORPORATION, a Texas Corporation

BY: _____
James E. Lokey, President

STATE OF : Texas
COUNTY OF : Dallas

This instrument was acknowledged before me on this ____ day of _____, 199__ by James E. Lokey.

[SEAL]

CARRIE L. PUTNAM
NOTARY PUBLIC
State of Texas
Comm. Exp. 08-10-99

Notary Public in and for the State of Texas
Printed Name: Carrie L. Putnam
My Commission Expires: 8-10-99

# SECOND AMENDMENT TO PURCHASE AGREEMENT

THIS SECOND AMENDMENT TO PURCHASE AGREEMENT (the "Amendment") made and entered into this _____ day of _____, 199___, between Robert D. Reeves ("Seller") and Settlement Capital Corporation, a Texas corporation, or its assignee, SSC Management Company.

## BACKGROUND

A.      The Seller and Purchaser entered into a certain Purchase Agreement dated _____ day of _____, 19___ (the "Agreement"), pursuant to which Purchaser purchased all of Seller's right, title and interest to receive certain Periodic Payments under the Release and Qualified Assignment, all on the terms and conditions more fully set forth therein.

B.      The Agreement is incorporated herein by reference thereto as if fully set forth in this Amendment. Any capitalized terms and headings used herein shall have the meanings given to them in the Agreement.

C.      At the request of the Seller, the Purchaser has agreed to amend the terms of the Purchase Price and the payment terms of same.

D.      The parties hereto now desire to amend the Agreement to reflect, among other things, the manner and conditions on which the Purchaser has agreed to the change in Purchase Price, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound hereby, the parties hereto covenant and agree that the Agreement is modified and amended as set forth below.

1.      Section 1 of the Agreement is hereby deleted in its entirety and amended to read in its entirety as follows:

Purchase and Sale.

.1      Purchase and Sale. Seller hereby sells, transfers, assigns, sets over and conveys to Purchaser, all right, title and interest of the Seller in, and to his right to receive payment under the "Assigned Assets", as defined in subsection 1.3 below, and, in reliance on the representations, warranties, and covenants of Seller contained herein, Purchaser hereby purchases and accepts the assignment of all right, title and interest of the Seller in and to the right to receive the Assigned Assets, which consist(s) of the following: lump sum payment due and payable February 2, 2000 in the amount of $40,000.00 for the aggregate purchase price of Eighteen Thousand Five Hundred Dollars ($18,500.00) (the "Purchase Price"); and lump sum payment due and payable on February 2, 2005 in the amount of $50,000.00 for the aggregate purchase price of Eleven Thousand Dollars ($11,000.00); and monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008 for the aggregate purchase price of Sixty Six Thousand Six Hundred Forty Five Dollars ($66,645.00).

1.2      Payment of the Purchase Price. The amount of $18,500.00 and $11,000.00 have been paid to Seller previously and the amount of $66,645.00 is being paid to the Seller upon the mutual execution and delivery of this Agreement

1

Seller's Initials

1.3    Assigned Assets: Contract Payment. The "Assigned Assets" shall mean all right, title and interest of Seller in, to and under his right to receive: lump sum payment due and payable February 2, 2000 in the amount of $40,000.00; and lump sum payment due and payable on February 2, 2005 in the amount of $50,000.00; and monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008 under the Release, the Settlement Agreement and the Qualified Assignment, and all right, title and interest of Seller to receive the monies under or pursuant to such agreements as noted on Exhibit "A" hereto (including, but not limited to, the Periodic Payments), any monies actually received by Seller pursuant to or by reason of any such agreements, the right to receive the "qualified funding asset" as defined in the Qualified Assignment and any interest on and the proceeds of all of the above, with respect to the: lump sum payment due and payable February 2, 2000 in the amount of $40,000.00; and lump sum payment due and payable on February 2, 2005 in the amount of $50,000.00; and monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008 and all of Seller's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above. Any payments made on account of any of the Assigned Assets (including, but not limited to, the Periodic Payments) is hereafter referred to as a "Contract Payment".

2.    Representations and Warranties. As an inducement to the Purchaser to execute this Amendment, the Seller makes the following representations and warranties to the Purchaser and acknowledges Purchaser's justifiable reliance thereon:

(a)    the Borrower is not in default under the Agreement;

(b)    all representations and warranties previously made to the Purchaser by the Seller remain true, accurate and complete;

(c)    the Agreement, as modified and amended herein, is a valid and binding obligation of the Seller and is fully enforceable in accordance with all stated terms; and

(d)    the Seller remains in compliance with all covenants and requirements set forth in the Agreement.

3.    Conditions Precedent. As a condition precedent to Purchaser's obligations under the Agreement, Seller shall execute and deliver to Purchaser in connection with this Amendment all other documents reasonably requested to be executed by Purchaser, including, but not limited to, the execution and delivery of UCC-1 Financing Statements to the Purchaser, as required in Section 4.5 of the Agreement and any and all additional notices and documents which may be required under the Agreement, including but not limited to the Notice of Direction of Payment, and an amendment to the Will.

4.    Binding Effect. This Amendment shall be binding upon and shall inure to the benefit of the Purchaser, the Seller and his heirs, executors, administrators, successors and assigns.

5.    Governing Law. This Amendment shall be governed by and construed in accordance with the domestic, internal laws (but not the law of conflicts of law) of the Commonwealth of Pennsylvania.

6.    Ratification. Except as expressly modified and amended herein, the Loan Agreement is hereby ratified and affirmed and will remain in full force and effect.

*R D R*
Seller's Initials

IN WITNESS WHEREOF, Purchaser has caused this Amendment to be duly executed by its General Partner and Seller has set his hand and seal hereto on the day and year first above written.

SELLER:                                    _Robert D. Reeves_
                                           Robert D. Reeves

STATE OF                    :
COUNTY OF                   :

This instrument was acknowledged before me on this 17ᵗʰ day of December 1997 by Robert D. Reeves.

[SEAL]                                     _Glenda M. Adams_
                                           Notary Public in and for the State of Alabama
                                           Printed Name: Glenda M Adams
                                           My Commission Expires: December 16, 1998.

SELLER'S SPOUSE:                           _Michelle R. Reeves_
                                           Michelle R. Reeves

STATE OF                    :
COUNTY OF                   :

This instrument was acknowledged before me on this 17ᵗʰ day of December 1997 by Michelle R. Reeves.

[SEAL]                                     _Glenda M. Adams_
                                           Notary Public in and for the State of Alabama
                                           Printed Name: Glenda M Adams
                                           My Commission Expires: December 16, 1998.

PURCHASER:                 SETTLEMENT CAPITAL CORPORATION, a
                           Texas Corporation

                           BY: _____
                               James E. Lokey, President

STATE OF        :    Texas
COUNTY OF       :    Dallas

This instrument was acknowledged before me on this 10ᵗʰ day of December 199_ by James E. Lokey.

[SEAL]
        CHERYL NICHOLSON
        NOTARY PUBLIC
        State of Texas
        Comm. Exp. 07-16-2000          Notary Public in and for the State of Texas
                                       Printed Name: Cheryl Nicholson
                                       My Commission Expires: 7-16-2000

## THIRD AMENDMENT TO PURCHASE AGREEMENT

THIS THIRD AMENDMENT TO PURCHASE AGREEMENT (the "Amendment") made and entered into this _____ day of _____, 199___, between Robert D. Reeves ("Seller") and Settlement Capital Corporation, a Texas corporation, or its assignee, SSC Management Company.

## BACKGROUND

A.    The Seller and Purchaser entered into a certain Purchase Agreement dated ____ day of _____, 19___ (the "Agreement"), pursuant to which Purchaser purchased all of Seller's right, title and interest to receive certain Periodic Payments under the Release and Qualified Assignment, all on the terms and conditions more fully set forth therein.

B.    The Agreement is incorporated herein by reference thereto as if fully set forth in this Amendment. Any capitalized terms and headings used herein shall have the meanings given to them in the Agreement.

C.    At the request of the Seller, the Purchaser has agreed to amend the terms of the Purchase Price and the payment terms of same.

D.    The parties hereto now desire to amend the Agreement to reflect, among other things, the manner and conditions on which the Purchaser has agreed to the change in Purchase Price, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises cotained herein and intending to be legally bound hereby, the parties hereto covenant and agree that the Agreement is modified and amended as set forth below:

1.    Section 1 of the Agreement is hereby deleted in its entirety and amended to read in its entirety as follows:

1.    Purchase and Sale.

1.1    Purchase and Sale. Seller hereby sells, transfers, assigns, sets over and conveys to Purchaser, all right, title and interest of the Seller in, and to his right to receive payment under the "Assigned Assets", as defined in subsection 1.3 below, and, in reliance on the representations, warranties, and covenants of Seller contained herein, Purchaser hereby purchases and accepts the assignment of all right, title and interestof the Seller in and to the right to receive the Assigned Assets, which consist(s) of the following: lump sum payment in the amount of $40,000.00 due and payable February 2, 2000 for the aggregate purchase price of Eighteen Thousand Five Hundred Dollars ($18,500.00) (the "Purchase Price"); and lump sum payment in the amount of $50,000.00 due and payable February 2, 2005 for the aggregate purchase price of Eleven Thousand Dollars ($11,000.00); and monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008 for the aggregate purchase price of Sixty Six Thousand Six Hundred Forty Five Dollars ($66,645.00); and monthly payments in the amount of $1,350.00 beginning February 1, 2008 continuing through January 31, 2013; and the lump sum payment in the amount of $60,000.00 due and payable February 2, 2010 for the aggregate purchase price of Thirteen Thousand Five Hundred Dollars ($13,500.00).

1.2    Payment of the Purchase Price. The amount of $18,500.00, $11,000.00, and $66,645.00 have been paid to Seller previously and the amount of $13,500.00 is being paid to

Seller's Initials

the Seller upon the mutual execution and delivery of this Agreement

1.3    Assigned Assets; Contract Payment. The "Assigned Assets" shall mean all right, title and interest of Seller in, to and under his right to receive: lump sum payment in the amount of $40,000.00 due and payable February 2, 2000; and lump sum payment in the amount of $50,000.00 due and payable February 2, 2005; and monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008; and monthly payments in the amount of $1,350.00 beginning February 1, 2008 continuing through January 31, 2013; and the lump sum payment in the amount of $60,000.00 due and payable February 2, 2010 under the Release, the Settlement Agreement and the Qualified Assignment, and all right, title and interest of Seller to receive the monies under or pursuant to such agreements as noted on Exhibit "A" hereto (including, but not limited to, the Periodic Payments), any monies actually received by Seller pursuant to or by reason of any such agreements, the right to receive the "qualified funding asset" as defined in the Qualified Assignment and any interest on and the proceeds of all of the above, with respect to the: lump sum payment in the amount of $40,000.00 due and payable February 2, 2000; and lump sum payment in the amount of $50,000.00 due and payable February 2, 2005; and monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008; and monthly payments in the amount of $1,350.00 beginning February 1, 2008 continuing through January 31, 2013; and the lump sum payment in the amount of $60,000.00 due and payable February 2, 2010 and all of Seller's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above. Any payments made on account of any of the Assigned Assets (including, but not limited to, the Periodic Payments) is hereafter referred to as a "Contract Payment".

2.    Representations and Warranties. As an inducement to the Purchaser to execute this Amendment, the Seller makes the following representations and warranties to the Purchaser and acknowledges Purchaser's justifiable reliance thereon:

    (a)    the Borrower is not in default under the Agreement;

    (b)    all representations and warranties previously made to the Purchaser by the Seller remain true, accurate and complete;

    (c)    the Agreement, as modified and amended herein, is a valid and binding obligation of the Seller and is fully enforceable in accordance with all stated terms; and

    (d)    the Seller remains in compliance with all covenants and requirements set forth in the Agreement.

3.    Conditions Precedent. As a condition precedent to Purchaser's obligations under the Agreement, Seller shall execute and deliver to Purchaser in connection with this Amendment all other documents reasonably requested to be executed by Purchaser, including but not limited to, the execution and delivery of UCC-1 Financing Statements to the Purchaser, as required in Section 4.5 of the Agreement and any and all additional notices and documents which may be required under the Agreement, including but not limited to the Notice of Direction of Payment; and, an amendment to the Will.

4.    Binding Effect. This Amendment shall be binding upon and shall inure to the benefit of the Purchaser, the Seller and his heirs, executors, administrators, successors and assigns.

5.    Governing Law. This Amendment shall be governed by and construed in accordance with the domestic, internal laws (but not the law of conflicts of law) of the Commonwealth of Pennsylvania.

Seller's Initials

IN WITNESS WHEREOF, Purchaser has caused this Amendment to be duly executed by its General Partner and Seller has set his hand and seal hereto on the day and year first above written.

SELLER:                          _Robert D. Reeves_
                                 Robert D. Reeves

STATE OF                 :
COUNTY OF                :

This instrument was acknowledged before me on this 25 day of MARCH 1998 by Robert D. Reeves.

[SEAL]                           _Glenda M. Adams_
                                 Notary Public in and for the State of ALABAMA
                                 Printed Name: GLenda M. Adams
                                 My Commission Expires: December 16, 1998

SELLER'S SPOUSE:                 _Michelle Reeves_
                                 Michelle Reeves

STATE OF                 :
COUNTY OF                :

This instrument was acknowledged before me on this 25 day of March 1998 by _____

[SEAL]                           _Glenda M Adams_
                                 Notary Public in and for the State of ALABAMA
                                 Printed Name: Glenda M. Adams
                                 My Commission Expires: December 16, 1998

PURCHASER:                       SETTLEMENT CAPITAL CORPORATION, a
                                 Texas Corporation

                                 BY: _James E. Lokey_
                                 James E. Lokey, President

STATE OF                 :   Texas
COUNTY OF                :   Dallas

This instrument was acknowledged before me on this 27th day of March 1998 by James E. Lokey.

[SEAL]
        CHERYL NICHOLSON         Notary Public in and for the State of TEXAS
        NOTARY PUBLIC            Printed Name: Cheryl Nicholson
        State of Texas           My Commission Expires: 7-16-2000
        Comm. Exp. 07-16-2000

Exhibit A
Robert D. Reeves

Travelers Life & Annuity Company
Policy No. 17563 SA 55449, 17564 SA 55449
17565 SA 55449, 17566 SA 55449

| Date | No. | Amount | | |
|---|---|---|---|---|
| 3/2/98 | 1 | $1,350.00 | | Security Title Agency |
| 4/2/98 | 2 | $1,350.00 | | Account No. 98101550 |
| 5/2/98 | 3 | $1,350.00 | | |
| 6/2/98 | 4 | $1,350.00 | | |
| 7/2/98 | 5 | $1,350.00 | | |
| 8/2/98 | 6 | $1,350.00 | | |
| 9/2/98 | 7 | $1,350.00 | | |
| 10/2/98 | 8 | $1,350.00 | | |
| 11/2/98 | 9 | $1,350.00 | | |
| 12/2/98 | 10 | $1,350.00 | | |
| 1/2/99 | 11 | $1,350.00 | | |
| 2/2/99 | 12 | $1,350.00 | | |
| 3/2/99 | 13 | $1,350.00 | | |
| 4/2/99 | 14 | $1,350.00 | | |
| 5/2/99 | 15 | $1,350.00 | | |
| 6/2/99 | 16 | $1,350.00 | | |
| 7/2/99 | 17 | $1,350.00 | | |
| 8/2/99 | 18 | $1,350.00 | | |
| 9/2/99 | 19 | $1,350.00 | | |
| 10/2/99 | 20 | $1,350.00 | | |
| 11/2/99 | 21 | $1,350.00 | | |
| 12/2/99 | 22 | $1,350.00 | | |
| 1/2/00 | 23 | $1,350.00 | | |
| 2/2/00 | 24 | $41,350.00 | | |
| 3/2/00 | 25 | $1,350.00 | | |
| 4/2/00 | 26 | $1,350.00 | | |
| 5/2/00 | 27 | $1,350.00 | | |
| 6/2/00 | 28 | $1,350.00 | | |
| 7/2/00 | 29 | $1,350.00 | | |
| 8/2/00 | 30 | $1,350.00 | | |
| 9/2/00 | 31 | $1,350.00 | | |
| 10/2/00 | 32 | $1,350.00 | | |
| 11/2/00 | 33 | $1,350.00 | | |
| 12/2/00 | 34 | $1,350.00 | | |
| 1/2/01 | 35 | $1,350.00 | | |
| 2/2/01 | 36 | $1,350.00 | | |
| 3/2/01 | 37 | $1,350.00 | | |
| 4/2/01 | 38 | $1,350.00 | | |
| 5/2/01 | 39 | $1,350.00 | | |
| 6/2/01 | 40 | $1,350.00 | | |
| 7/2/01 | 41 | $1,350.00 | | |
| 8/2/01 | 42 | $1,350.00 | | |
| 9/2/01 | 43 | $1,350.00 | | |
| 10/2/01 | 44 | $1,350.00 | | |
| 11/2/01 | 45 | $1,350.00 | | |
| 12/2/01 | 46 | $1,350.00 | | |
| 1/2/02 | 47 | $1,350.00 | | |
| 2/2/02 | 48 | $1,350.00 | | |
| 3/2/02 | 49 | $1,350.00 | | |
| 4/2/02 | 50 | $1,350.00 | | |
| 5/2/02 | 51 | $1,350.00 | | |
| 6/2/02 | 52 | $1,350.00 | | |
| 7/2/02 | 53 | $1,350.00 | | |
| 8/2/02 | 54 | $1,350.00 | | |
| 9/2/02 | 55 | $1,350.00 | | |
| 10/2/02 | 56 | $1,350.00 | | |
| 11/2/02 | 57 | $1,350.00 | | |
| 12/2/02 | 58 | $1,350.00 | | |
| 1/2/03 | 59 | $1,350.00 | | |
| 2/2/03 | 60 | $1,350.00 | | |
| 3/2/03 | 61 | $1,350.00 | | |
| 4/2/03 | 62 | $1,350.00 | | |
| 5/2/03 | 63 | $1,350.00 | | |
| 6/2/03 | 64 | $1,350.00 | | |
| 7/2/03 | 65 | $1,350.00 | | |
| 8/2/03 | 66 | $1,350.00 | | |
| 9/2/03 | 67 | $1,350.00 | | |

*Robert D. Reeves*
Robert D. Reeves

Page 1 of 3

Exhibit A
Robert D. Reeves

Travelers Life & Annuity Company
Policy No. 17563 SA 55449, 17564 SA 55449
17565 SA 55449, 17566 SA 55449

Security Title Agency
Account No. 98101550

| Date | No. | Amount |
|---|---|---|
| 10/2/03 | 68 | $1,350.00 |
| 11/2/03 | 69 | $1,350.00 |
| 12/2/03 | 70 | $1,350.00 |
| 1/2/04 | 71 | $1,350.00 |
| 2/2/04 | 72 | $1,350.00 |
| 3/2/04 | 73 | $1,350.00 |
| 4/2/04 | 74 | $1,350.00 |
| 5/2/04 | 75 | $1,350.00 |
| 6/2/04 | 76 | $1,350.00 |
| 7/2/04 | 77 | $1,350.00 |
| 8/2/04 | 78 | $1,350.00 |
| 9/2/04 | 79 | $1,350.00 |
| 10/2/04 | 80 | $1,350.00 |
| 11/2/04 | 81 | $1,350.00 |
| 12/2/04 | 82 | $1,350.00 |
| 1/2/05 | 83 | $1,350.00 |
| 2/2/05 | 84 | $51,350.00 |
| 3/2/05 | 85 | $1,350.00 |
| 4/2/05 | 86 | $1,350.00 |
| 5/2/05 | 87 | $1,350.00 |
| 6/2/05 | 88 | $1,350.00 |
| 7/2/05 | 89 | $1,350.00 |
| 8/2/05 | 90 | $1,350.00 |
| 9/2/05 | 91 | $1,350.00 |
| 10/2/05 | 92 | $1,350.00 |
| 11/2/05 | 93 | $1,350.00 |
| 12/2/05 | 94 | $1,350.00 |
| 1/2/06 | 95 | $1,350.00 |
| 2/2/06 | 96 | $1,350.00 |
| 3/2/06 | 97 | $1,350.00 |
| 4/2/06 | 98 | $1,350.00 |
| 5/2/06 | 99 | $1,350.00 |
| 6/2/06 | 100 | $1,350.00 |
| 7/2/06 | 101 | $1,350.00 |
| 8/2/06 | 102 | $1,350.00 |
| 9/2/06 | 103 | $1,350.00 |
| 10/2/06 | 104 | $1,350.00 |
| 11/2/06 | 105 | $1,350.00 |
| 12/2/06 | 106 | $1,350.00 |
| 1/2/07 | 107 | $1,350.00 |
| 2/2/07 | 108 | $1,350.00 |
| 3/2/07 | 109 | $1,350.00 |
| 4/2/07 | 110 | $1,350.00 |
| 5/2/07 | 111 | $1,350.00 |
| 6/2/07 | 112 | $1,350.00 |
| 7/2/07 | 113 | $1,350.00 |
| 8/2/07 | 114 | $1,850.00 |
| 9/2/07 | 115 | $1,350.00 |
| 10/2/07 | 116 | $1,350.00 |
| 11/2/07 | 117 | $1,350.00 |
| 12/2/07 | 118 | $1,350,00 |
| 1/2/08 | 119 | $1,350.00 |
| 2/2/08 | 120 | $1,350.00 |
| 3/2/08 | 121 | $1,350.00 |
| 4/2/08 | 122 | $1,350.00 |
| 5/2/08 | 123 | $1,350.00 |
| 6/2/08 | 124 | $1,350.00 |
| 7/2/08 | 125 | $1,350.00 |
| 8/2/08 | 126 | $1,350.00 |
| 9/2/08 | 127 | $1,350.00 |
| 10/2/08 | 128 | $1,360.00 |
| 11/2/08 | 129 | $1,350.00 |
| 12/2/08 | 130 | $1,350.00 |
| 1/2/09 | 131 | $1,350.00 |
| 2/2/09 | 132 | $1,350.00 |
| 3/2/09 | 133 | $1,350.00 |
| 4/2/09 | 134 | $1,350.00 |

Robert D. Reeves

Robert D. Reeves

Page 2 of 3

**Exhibit A**
Robert D. Reeves

Travelers Life & Annuity Company
Policy No. 17563 SA 55449, 17564 SA 55449
17565 SA 55449, 17566 SA 55449

| | | | |
|---|---|---|---|
| 5/2/09 | 135 | $1,350.00 | |
| 6/2/09 | 136 | $1,350.00 | Security Title Agency |
| 7/2/09 | 137 | $1,350.00 | Account No. 98101550 |
| 8/2/09 | 138 | $1,350.00 | |
| 9/2/09 | 139 | $1,350.00 | |
| 10/2/09 | 140 | $1,350.00 | |
| 11/2/09 | 141 | $1,350.00 | |
| 12/2/09 | 142 | $1,350.00 | |
| 1/2/10 | 143 | $1,350.00 | |
| 2/2/10 | 144 | $61,350.00 | |
| 3/2/10 | 145 | $1,350.00 | |
| 4/2/10 | 146 | $1,350.00 | |
| 5/2/10 | 147 | $1,350.00 | |
| 6/2/10 | 148 | $1,350.00 | |
| 7/2/10 | 149 | $1,350.00 | |
| 8/2/10 | 150 | $1,350.00 | |
| 9/2/10 | 151 | $1,350.00 | |
| 10/2/10 | 152 | $1,350.00 | |
| 11/2/10 | 153 | $1,350.00 | |
| 12/2/10 | 154 | $1,350.00 | |
| 1/2/11 | 155 | $1,350.00 | |
| 2/2/11 | 156 | $1,350.00 | |
| 3/2/11 | 157 | $1,350.00 | |
| 4/2/11 | 158 | $1,350.00 | |
| 5/2/11 | 159 | $1,350.00 | |
| 6/2/11 | 160 | $1,350.00 | |
| 7/2/11 | 161 | $1,350.00 | |
| 8/2/11 | 162 | $1,350.00 | |
| 9/2/11 | 163 | $1,350.00 | |
| 10/2/11 | 164 | $1,350.00 | |
| 11/2/11 | 165 | $1,350.00 | |
| 12/2/11 | 166 | $1,350.00 | |
| 1/2/12 | 167 | $1,350.00 | |
| 2/2/12 | 168 | $1,350.00 | |
| 3/2/12 | 169 | $1,350.00 | |
| 4/2/12 | 170 | $1,350.00 | |
| 5/2/12 | 171 | $1,350.00 | |
| 6/2/12 | 172 | $1,350.00 | |
| 7/2/12 | 173 | $1,350.00 | |
| 8/2/12 | 174 | $1,350.00 | |
| 9/2/12 | 175 | $1,350.00 | |
| 10/2/12 | 176 | $1,350.00 | Robert D. Reeves |
| 11/2/12 | 177 | $1,350.00 | |
| 12/2/12 | 178 | $1,350.00 | |
| 1/2/13 | 179 | $1,350.00 | Page 3 of 3 |

# FOURTH AMENDMENT TO PURCHASE AGREEMENT

THIS FOURTH AMENDMENT TO PURCHASE AGREEMENT (the "Amendment") made and entered into this day of _____, 199 _, between Robert D. Reeves ("Seller") and Settlement Capital Corporation, a Texas corporation, or its assignee, SSC Management Company.

## BACKGROUND

A.    The Seller and Purchaser entered into a certain Purchase Agreement dated _____ day of _____, 19 _ , First Amendment to Purchase Agreement dated _____ day of _____, 19 _ , Second Amendment to Purchase Agreement dated, and Third Amendment to Purchase Agreement dated _____ day of _____, 19 _ (the "Agreement"), pursuant to which Purchaser purchased all of Seller's right, title and interest to receive certain Periodic Payments under the Release and Qualified Assignment, all on the terms and conditions more fully set forth therein.

B.    The Agreement is incorporated herein by reference thereto as if fully set forth in this Amendment. Any capitalized terms and headings used herein shall have the meanings given to them in the Agreement.

C.    At the request of the Seller, the Purchaser has agreed to amend the terms of the Purchase Price and the payment terms of same.

D.    The parties hereto now desire to amend the Agreement to reflect, among other things, the manner and conditions on which the Purchaser has agreed to the change in Purchase Price, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound hereby, the parties hereto covenant and agree that the Agreement is modified and amended as set forth below.

1.    Section 1 of the Agreement is hereby deleted in its entirety and amended to read in its entirety as follows:

1.    Purchase and Sale.

1.1    Purchase and Sale. Seller hereby sells, transfers, assigns, sets over and conveys to Purchaser, all right, title and interest of the Seller in, and to his right to receive payment under the "Assigned Assets", as defined in subsection 1.3 below, and, in reliance on the representations, warranties, and covenants of Seller contained herein, Purchaser hereby purchases and accepts the assignment of all right, title and interest of the Seller in and to the right to receive the Assigned Assets, which consist(s) of the following: lump sum payment in the amount of $40,000.00 due and payable February 2, 2000 for the aggregate purchase price of Eighteen Thousand Five Hundred Dollars ($18,500.00) (the "Purchase Price"); lump sum payment in the amount of $50,000.00 due and payable February 2, 2005 for the aggregate

*RDR*
Seller's Initials

purchase price of Eleven Thousand Dollars ($11,000.00) (the "Purchase Price"); monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008 for the aggregate purchase price of Sixty Six Thousand Six Hundred Forty Five Dollars ($66,645.00) (the "Purchase Price"); monthly payments in the amount of $1,350.00 beginning February 1, 2008 continuing through January 31, 2013 and lump sum payment in the amount of $60,000.00 due and payable February 2, 2010 for the aggregate purchase price of Thirteen Thousand Five Hundred Dollars ($13,500.00) (the "Purchase Price"); and monthly payments in the amount of $1,350.00 beginning February 1, 2013 continuing through January 31, 2018 and lump sum payment in the amount of $70,000.00 due and payable February 2, 2015 for the aggregate purchase price of Seven Thousand Five Hundred Seventy Nine Dollars ($7,579.00) (the "Purchase Price").

    1.2    <u>Payment of the Purchase Price</u>.  The amount of $18,500.00, $11,000.00, $66,645.00, and $13,500.00 has been paid to Seller previously and the amount of $7,579.00 is being paid to the Seller upon the mutual execution and delivery of this Agreement.

    1.3    <u>Assigned Assets: Contract Payment</u>. The "Assigned Assets" shall mean all right, title and interest of Seller in, to and under his right to receive: lump sum payment in the amount of $40,000.00 due and payable February 2, 2000; lump sum payment in the amount of $50,000.00 due and payable February 2, 2005; monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008; monthly payments in the amount of $1,350.00 beginning February 1, 2008 continuing through January 31, 2013 and lump sum payment in the amount of $60,000.00 due and payable February 2, 2010; and monthly payments in the amount of $1,350.00 beginning February 1, 2013 continuing through January 31, 2018 and lump sum payment in the amount of $70,000.00 due and payable February 2, 2015 under the Release, the Settlement Agreement and the Qualified Assignment, and all right, title and interest of Seller to receive the monies under or pursuant to such agreements as noted on Exhibit "A" hereto (including, but not limited to, the Periodic Payments), any monies actually received by Seller pursuant to or by reason of any such agreements, the right to receive the "qualified funding asset" as defined in the Qualified Assignment and any interest on and the proceeds of all of the above, with respect to the: lump sum payment in the amount of $40,000.00 due and payable February 2, 2000; lump sum payment in the amount of $50,000.00 due and payable February 2, 2005; monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008; monthly payments in the amount of $1,350.00 beginning February 1, 2008 continuing through January 31, 2013 and lump sum payment in the amount of $60,000.00 due and payable February 2, 2010; and monthly payments in the amount of $1,350.00 beginning February 1, 2013 continuing through January 31, 2018 and lump sum payment in the amount of $70,000.00 due and payable February 2, 2015 and all of Seller's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above. Any payments made on account of any of the Assigned Assets (including, but not limited to, the Periodic Payments) is hereafter referred to as a "Contract Payment".

    2.    <u>Representations and Warranties</u>. As an inducement to the Purchaser to execute this Amendment, the Seller makes the following representations and warranties to the Purchaser and acknowledges Purchaser's justifiable reliance thereon:

Seller's Initials

(a)    the Borrower is not in default under the Agreement;

(b)    all representations and warranties previously made to the Purchaser by the Seller remain true, accurate and complete;

(c)    the Agreement, as modified and amended herein, is a valid and binding obligation of the Seller and is fully enforceable in accordance with all stated terms; and

(d)    the Seller remains in compliance with all covenants and requirements set forth in the Agreement.

3.    Conditions Precedent.  As a condition precedent to Purchaser's obligations under the Agreement, Seller shall execute and deliver to Purchaser in connection with this Amendment all other documents reasonably requested to be executed by Purchaser, including, but not limited to, the execution and delivery of UCC-1 Financing Statements to the Purchaser, as required in Section 4.5 of the Agreement and any and all additional notices and documents which may be required under the Agreement, including but not limited to the Notice of Direction of Payment, and an amendment to the Will.

4.    Binding Effect.  This Amendment shall be binding upon and shall inure to the benefit of the Purchaser, the Seller and his heirs, executors, administrators, successors and assigns.

5.    Governing Law.  This Amendment shall be governed by and construed in accordance with the domestic, internal laws (but not the law of conflicts of law) of the Commonwealth of Pennsylvania.

6.    Ratification.  Except as expressly modified and amended herein, the Loan Agreement is hereby ratified and affirmed and will remain in full force and effect.

IN WITNESS WHEREOF, Purchaser has caused this Amendment to be duly executed by its General Partner and Seller has set his hand and seal hereto on the day and year Second above written.

Seller's Initials

**SELLER:**

_Robert D. Reeves_
Robert D. Reeves

STATE OF : Alabama
COUNTY OF : Montgomery

This instrument was acknowledged before me on this _15_ day of _May_ 199_ by Robert D. Reeves.

[SEAL]

_Harry A Lyles_
Notary Public in and for the State of _Alabama_
Printed Name: _Harry A Lyles_
My Commission Expires: _9/8/99_

**SELLERS SPOUSE:**

_Michelle R Reeves_
Michelle R. Reeves

STATE OF : Alabama
COUNTY OF : Montgomery

This instrument was acknowledged before me on this _15_ day of _May_ 199_ by Michelle R. Reeves.

[SEAL]

_Harry A Lyles_
Notary Public in and for the State of _Alabama_
Printed Name: _Harry A Lyles_
My Commission Expires: _9/8/99_

4

SPACE FOR USE OF FILING OFFICER

**FINANCING STATEMENT** — FOLLOW INSTRUCTIONS CAREFULLY
This Financing Statement is presented for filing pursuant to the Uniform Commercial Code and will remain effective, with certain exceptions, for 5 years from date of filing.

| A. NAME & TEL. # OF CONTACT AT FILER (optional) | B. FILING OFFICE ACCT. # (optional) |
|---|---|
| Cheryl Carraway | |

C. RETURN COPY TO: (Name and Mailing Address)

```
Settlement Capital Corporation
15851 Dallas Parkway, Suite 740
Addison, TX  75001
```

D. OPTIONAL DESIGNATION [if applicable]: ☐ LESSOR/LESSEE ☐ CONSIGNOR/CONSIGNEE ☐ NON-UCC FILING

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b)

| | | | | |
|---|---|---|---|---|
| 1a. ENTITY'S NAME | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Reeves | Robert | D. | | |
| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 2802 Alt Co Road 59 | Deatsville | AL | US | 36022 |
| 1d. S.S. OR TAX I.D.# 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 | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g. ENTITY'S ORGANIZATIONAL I.D.#, if any ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b)

| | | | | |
|---|---|---|---|---|
| 2a. ENTITY'S NAME | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| | | | | |
| 2d. S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g. ENTITY'S ORGANIZATIONAL I.D.#, if any ☐ NONE |

**3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME** - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ENTITY'S NAME | | | | |
| Settlement Capital Corporation | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 15851 Dallas Parkway, Suite 740 | Addison | TX | US | 75001 |

**4. This FINANCING STATEMENT covers the following types or items of property:**

SEE ATTACHED EXHIBIT

PLAINTIFF'S EXHIBIT D

**5. CHECK BOX [if applicable]** — This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutory provisions [additional data may be required]

**7.** [if filed in Florida (check one) ☐ Documentary ☐ Documentary stamp ☐ Non-documentary stamp ☐ tax not applicable

**6. REQUIRED SIGNATURE(S)**
*Robert D Reeves*

**8.** This FINANCING STATEMENT is (for record) [or recorded] in the REAL ESTATE RECORDS Attach Addendum [if applicable]

**9.** Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

(1) FILING OFFICER COPY — NATIONAL FINANCING STATEMENT (FORM UCC1) (TRANS) (REV. 12/18/95)

REORDER FROM Registry, Inc. 814 PIERCE ST. P.O. BOX 218 ANOKA, MN 55303 (800) 451-1713

EXHIBIT A

to

UCC-1 FINANCING STATEMENT

Debtor/Assignor: Robert D. Reeves
Secured Party/Assignee: Settlement Capital Corporation

This Exhibit A is attached to and incorporated in a financing statement pertaining to the Debtor/Assignor as Seller (referred to as the "Debtor/Assignor" for the purpose of this financing statement only) and Settlement Capital Corporation, as Purchaser (referred to as the "Secured Party/Assignee" for purposes of this financing statement only) under that certain Purchase Agreement dated as of August 20, 1996; and First Amendment to Purchase Agreement dated as of December 5, 1996 ; Second Amendment to Purchase Agreement dated as of December 17, 1997; Third Amendment to Purchase Agreement dated as of March 25, 1998; and that certain Fourth Amendment to Purchase Agreement dated as of ("Purchase Agreement"), by and between the Debtor/Assignor and the Secured Party/Assignee respecting the payments scheduled to be made under that certain annuity (the "Annuity") issued by The Travelers Life Insurance Company, Policy 17563 SA 55449 and 17564 SA 55449. Capitalized terms used herein and not defined shall have the respective meanings given to them in the Purchase Agreement. The financing statement to which this Exhibit A is attached and forms a part covers all of the Debtor's/Assignor's right, title and interest in, to and under the following types and items of personal property, whether they be general intangibles or any other type of personal property, and whether now owned and existing or hereafter acquired or arising:

1.  all "Assigned Assets" (as defined below) transferred by the Debtor/Assignor to the Secured Party/Assignee from time to time pursuant to the Purchase Agreement;

2.  all amounts on deposit with respect to the Assigned Assets from time to time in the Purchaser's accounts;

3.  all other rights relating to and payments made in respect of the Purchase Agreement; and

4.  all proceeds in respect of all of the foregoing types and items of property.

As used herein, the following terms have the following meanings:

"Assigned Assets" shall mean all right, title and interest of Debtor/Assignor in, to and under his right to receive: lump sum payment in the amount of $40,000.00 due and payable February 2, 2000; lump sum payment in the amount of $50,000.00 due and payable February 2, 2005; monthly payments in the amount of $1,350.00 beginning February 1, 1998 continuing through January 31, 2008; monthly payments in the amount of $1,350.00 beginning February 1, 2008 continuing through January 31, 2013 and lump sum payment in the amount of $60,000.00 due and payable February 2, 2010; and monthly payments in the amount of $1,350.00 beginning February 1, 2013 continuing through January 31, 2018 and lump sum payment in the amount of $70,000.00 due and payable February 2, 2015 under the Settlement Agreements among Debtor/Assignor and Travelers Insurance Company (collectively, the "Periodic Payments") and all right, title and interest of Debtor/Assignor to receive the Periodic Payments, any monies actually received by Debtor/Assignor pursuant to or by reason of the Periodic Payments and any interest on and the proceeds of all of the above, and all of Debtor/Assignor's present or future right, title and interest to sell, assign, transfer, cause an early termination of, settle, receive consideration for, or undertake any similar activity with respect to any of the above.

CV-05-2236

| State of Alabama Unified Judicial System | **COVER SHEET CIRCUIT COURT – CIVIL CASE** (Not For Domestic Relations Cases) | Case Number G V ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐ |
|---|---|---|
| Form ARCiv-93  Rev.5/99 | | Date of Filing: ☐☐ ☐☐ ☐☐☐☐  Judge Code: ☐☐☐ Month  Day  Year |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ Montgomery County _____, ALABAMA

Robert Daniel Reeves _____ v. _____ Settlement Capital Corporation, et al.

*(Name of Plaintiff)* *(Name of Defendant)*

**Plaintiff**
First Plaintiff · ☐ Business ☑ Individual
☐ Government ☐ Other

**Defendant**
First Defendant ☑ Business ☐ Individual
☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults In Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

FILED 2005 AUG 29 PM 12:29 CIRCUIT COURT OF MONTGOMERY COUNTY

**ORIGIN** *(check one)*: F ☑ INITIAL FILING     A ☐ APPEAL FROM DISTRICT COURT     O ☐ OTHER: _____

R ☐ REMANDED     T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO   Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED     ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:** A R G 0 0 1

Date 8/29/05

Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☐ NO ☐ UNDECIDED

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number**<br><br>CV - DS - 2236 |
|---|---|---|

IN THE _____Circuit Court_____ **COURT OF** ___Montgomery___ **COUNTY**

**Plaintiff** Robert Daniel Reeves      **v. Defendant**   Settlement Capital Corporation

D1

**NOTICE TO** _____ Settlement Capital Corporation 14755 Preston Road, Suite 130 Dallas TX 75254 _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ J. Knox Argo, P.C. _____ WHOSE

ADDRESS IS _____ 6706 Taylor Circle, Montgomery, AL 36117 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☒ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date ___09/02/05___       _~Melissa Rittenour~_       By: _KR_
                          Clerk/Register

---

☒ Certified Mail is hereby requested.       _~signature~_

                                            Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____
                                                              (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
                              in _____ County,

Alabama on _____
              (Date)

_____                     _____
Date                              Server's Signature

_____                     _____
Address of Server                 Type of Process Server

no tracking # slip

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number<br><br>CV-05- 2236 |
|---|---|---|

IN THE _____ Circuit Court _____ **COURT OF** _____ Montgomery _____ **COUNTY**

**Plaintiff** Robert Daniel Reeves                    **v. Defendant** Travelers Life and Annuity Company, et al.

D2

**NOTICE TO** Travelers Life and Annuity Company C/O The Corporation Company, 2000 Interstate Park Dr., Ste. 204 Montgomery, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ J. Knox Argo, P.C. _____ WHOSE

ADDRESS IS _____ 6706 Taylor Circle, Montgomery, AL 36117 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN    30    DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☑ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ 09/02/05 _____                    _____ Melissa Pittman _____ By _____

                                                        **Clerk/Register**

☐ Certified Mail is hereby requested. _____

                                        **Plaintiff's/Attorney's Signature**

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

                                                        (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on _____

                (Date)

Date _____

**Address of Server** _____

                                        **Server's Signature** _____

                                        **Type of Process Server** _____

| State of Alabama Unified Judicial System | SUMMONS - CIVIL - | Case Number |
|---|---|---|
| Form C-34    Rev 6/88 | | CV-05- 2236 |

IN THE ___Circuit Court___ **COURT OF** ___Montgomery___ **COUNTY**

**Plaintiff** Robert Daniel Reeves    **v. Defendant** Travelers Insurance Company, et al.

D3

**NOTICE TO** ___Travelers Insurance Company C/O The Corporation Company, 2000 Interstate Park Drive, Ste. 204 Montgomery, AL 36109___

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY ___J. Knox Argo, P.C.___ WHOSE

ADDRESS IS ___6706 Taylor Circle, Montgomery, AL 36117___

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN ___30___ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☑ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of ___ pursuant to the Alabama Rules of Civil Procedure.

Date ___09/02/05___    ___Delissa Pittman___ By: ___ss___
Clerk/Register

☐ Certified Mail is hereby requested.    ___

**Plaintiff's/Attorney's Signature**

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on ___

(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to ___ in ___ County,

Alabama on ___

(Date)

Date ___

Address of Server ___

**Server's Signature** ___

**Type of Process Server** ___

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number**<br><br>CV-05- 2236 |
| --- | --- | --- |

IN THE _____ Circuit Court _____ **COURT OF** _____ Montgomery _____ **COUNTY**

**Plaintiff**  Robert Daniel Reeves    **v. Defendant**  Travelers Indemnity Company, et al.

D4

**NOTICE TO**  Travelers Indemnity Company C/O CSC Lawyers Incorporating Svc., Inc., 150 S. Perry Street, Montgomery, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ J. Knox Argo, P.C. _____ WHOSE

ADDRESS IS _____ 6706 Taylor Circle, Montgomery, AL 36117 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____ 30 _____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☑ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____ 09/02/05 _____    _____ Melissa Pittman _____    By _____
                                         Clerk/Register

☐ Certified Mail is hereby requested.    _____

                                         Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____
                                                                        (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____
                        (Date)

_____         _____
Date                              Server's Signature

_____         _____
Address of Server                 Type of Process Server

| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number<br><br>CV-05- 2236 |
| --- | --- | --- |

**IN THE** _____Circuit Court_____ **COURT OF** _____Montgomery_____ **COUNTY**

**Plaintiff** Robert Daniel Reeves    **v. Defendant** Travelers Property and Casualty Insurance Company, et al.

DS

**NOTICE TO** Travelers Property and Casualty Insurance Company C/O CSC Lawyers Incorporating Svc., Inc., 150 S. Perry Street, Montgomery, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____J. Knox Argo, P.C._____ WHOSE

ADDRESS IS _____6706 Taylor Circle, Montgomery, AL 36117_____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN     30     DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☑ **You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.**

☐ Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____09/02/05_____    _Melissa Rittenour_    By_____

Clerk/Register

---

☐ Certified Mail is hereby requested.

Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____
(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County, Alabama on _____
(Date)

Date _____

Address of Server _____

Server's Signature

Type of Process Server